UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS SAMATARO, et al.,

       Plaintiff,                           Case No. 20-12185

vs.                                         HON. MARK A. GOLDSMITH

KELLER WILLIAMS REALTY, INC.,
et al.,

       Defendants.
_____/

**OPINION & ORDER**
**GRANTING IN PART DEFENDANT'S MOTION TO DISMISS (Dkt. 23) AND**
**TRANSFERRING THE ACTION**

Plaintiffs Thomas Samataro and William Miskokomon, individually and on behalf of all others similarly situated, have filed complaint against Defendants Keller Williams Realty, Inc. ("KWRI"); M77, LLC d/b/a Keller Williams Paint Creek & Somerset ("M77"); and Great Day Real Estate, LLC d/b/a Keller Williams Troy Market Center ("Troy Market Center"), for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). Prior to filing the instant action, Plaintiffs' counsel, Avi Kaufman and Stefan Coleman, filed a putative class action in the United States District Court for the Western District of Texas, Wright v. Keller Williams Realty, Inc., No. 18-00775 (the "Wright action"), bringing claims against KWRI under the TCPA.

This matter is now before the Court on KWRI's motion to dismiss (Dkt. 23). KWRI seeks dismissal for lack of personal jurisdiction and venue, or, alternatively, transfer to the Western District of Texas pursuant to the first-to-file doctrine. For the reasons that follow, the Court grants in part the motion and transfers this action to the Western District of Texas.

1

## I. BACKGROUND

Plaintiffs initiated the instant putative class action on August 13, 2020.  See Compl. (Dkt. 1).  The action stems from Defendants' allegedly unsolicited marketing calls to Plaintiffs' personal cell phones, without Plaintiffs' prior written consent for these calls and despite the fact that Plaintiffs' numbers were registered on the National Do Not Call Registry.  Am. Compl. ¶¶ 39-88 (Dkt. 17).  Plaintiffs allege that KWRI trained and directed M77 and Troy Market Center agents to cold call consumers.  Plaintiffs propose the following class definitions:

> **Pre-recorded No Consent Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) someone from KW M77 or Keller Williams Troy Market Center called, (2) using a prerecorded message, (3) for substantially the same purpose that they called Plaintiff Samataro, and (4) for whom the Defendants claim (a) they obtained prior express written consent in the same manner as Defendants claim they obtained prior express written consent to call Plaintiff Samataro, or (b) the Defendants did not obtain prior express written consent.
>
> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) someone on behalf of the KW M77 or Keller Williams Troy Market Center called more than one time, (2) within any 12-month period, (3) where the person's phone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same purpose as the calls to Plaintiffs, and (5) for whom the Defendants claim (a) they obtained prior express written consent in the same manner as the Defendants claim they supposedly obtained prior express written consent to call Plaintiffs, or (b) the Defendants did not obtain prior express written consent.
>
> **Michigan Pre-record Class** All persons in Michigan who from four years prior to the filing of this action through the class certification (1) someone from KW M77 or Keller Williams Troy Market Center called, (2) using a prerecorded message, (3) for substantially the same purpose as the calls to Plaintiff Samataro, and (4) for whom the Defendants claim (a) they obtained prior express written consent in the same manner as Defendants claim they obtained prior express written consent to call Plaintiff Samataro, or (b) the Defendants did not obtain prior express written consent.

Am. Compl. ¶ 89.

On September 12, 2018, almost two years before filing the present action, Plaintiffs' counsel filed a putative class action (the Wright action) in the Western District of Texas, asserting

claims against KWRI under the TCPA.  In their second amended complaint, filed July 16, 2019, the Wright action plaintiffs propose the following class definitions:

> **Prerecorded No Consent Class**: All persons in the United States who from four years prior to the filing of this action through the present (1) Defendant (or an agency acting on behalf of Defendant) called (2) on the person's cellular telephone number (3) using a prerecorded voice message, and (4) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call Plaintiffs, or (b) they did not obtain prior express written consent.
>
> **Autodialed No Consent Class**: All persons in the United States who from four years prior to the filing of this action through the present (1) Defendant (or an agency acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using an automatic telephone dialing system, and (4) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call Plaintiffs, or (b) they did not obtain prior express written consent.
>
> **Autodialed Stop Class**: All persons in the United States who from four years prior to the filing of this action through the present: (1) Defendant (or an agency acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using an automatic telephone dialing system, (4) after the person informed Defendant that s/he no longer wished to receive phone calls from Defendant.
>
> **Prerecorded Stop Class**: All persons in the United States who from four years prior to the filing of this action through the present: (1) Defendant (or an agency acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using a prerecorded voice message, (4) after the person informed Defendant that s/he no longer wished to receive phone calls from Defendant.
>
> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through the present (1) Defendant (or an agency acting on behalf of Defendant) called more than one time; (2) within any 12-month period (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call Plaintiffs, or (b) they did not obtain prior express written consent.

See Wright action 2d Am. Comp., Ex. A to Def. Mot., ¶ 50 (Dkt. 23-2).

3

As explained below, the class definitions in the instant case and the Wright case are substantially similar, as are the issues in the two cases, counseling application of the first-to-file rule and transfer of this case to the Western District of Texas.

## II. DISCUSSION

The first-to-file rule is a "well-established doctrine that encourages comity among federal courts of equal rank." Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 551 (6th Cir. 2007) (quoting AmSouth Bank v. Dale, 386 F.3d 763, 791 n.8 (6th Cir. 2004)). Defendants often seek application of the rule when a plaintiff files suit against the defendants in one district court subsequent to a duplicative class action being filed against the defendants in a separate district court. See, e.g., Heyman v. Lincoln National Life Ins. Co., 781 F. App'x 463, 468 (6th Cir. 2019); Baatz v. Columbia Gas Transmission, LLC, 814 F.3d 785, 789 (6th Cir. 2016); Collier v. MedCare Investment Corp., No. 18-00331, 2018 WL 2364050, at *2 (M.D. Tenn. May 24, 2018); Watson v. Jimmy John's, LLC, No. 15-768, 2015 WL 4132553, at *2 (S.D. Ohio July 8, 2015). Pursuant to the first-to-file rule, "when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to judgment.'" Certified Restoration, 511 F.3d at 551 (quoting Zide Sport Shop of Ohio v. Ed Tobergte Assoc., Inc., 16 F. App'x 433, 437 (6th Cir. 2001)). In addition to promoting comity, the rule "conserves judicial resources by minimizing duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of conflicting results." Baatz, 814 F.3d at 789 (citations omitted).

Courts evaluate three factors in deciding whether to apply the first-to-file rule: (i) the chronology of events, (ii) the similarity of the parties involved, and (iii) the similarity of the issues or claims at stake. Id. (citation omitted). "If these three factors support application of the rule, the court must also determine whether any equitable considerations, such as evidence of 'inequitable

4

conduct, bad faith, anticipatory suits, or forum shopping,' merit not applying the first-to-file rule in a particular case." Id. (quoting Certified Restoration, 511 F.3d at 551-552 (internal brackets omitted)). The Sixth Circuit in Baatz warned against wooden application of the rule, emphasizing that "[i]t is within the discretion of the district court to decline to apply the first-to-file rule." Id. at 792-793 (citations omitted). However, the Sixth Circuit has also cautioned that "deviations from the rule should be the exception, rather than the norm." Id. at 792 (citation omitted).

The Court addresses each of the first-to-file factors in turn.

### A. Chronology of Events

Plaintiffs do not challenge that the Wright action was filed prior to the instant action. Nor would such a challenge be successful. "The dates to compare for chronology purposes of the first-to-file rule are when the relevant complaints are filed." Id. at 791 (citation omitted). Because the Wright action complaint was filed on September 12, 2018, well before the complaint in the instant action was filed on August 13, 2020, the first factor is satisfied.

### B. Similarity of the Issues Involved

"The issues need not be identical, but they must 'be materially on all fours' and 'have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" Id. (quoting Smith v. Sec. & Exch. Comm'n, 129 F.3d 356, 361 (6th Cir. 1997) (en banc). Plaintiffs do not dispute that the Wright action and the instant case involve similar issues and TCPA claims. The complaint in the Wright action and the complaint in this case both were drafted by the same attorneys and use identical language throughout much of the two filings. See Heyman, 781 F. App'x at 477 (finding issues between two actions substantially overlapped where complaints were drafted by the same attorney and used highly similar language). Both complaints allege KWRI and/or its agents made unsolicited marketing calls in violation of the TCPA. The only material difference between the two complaints is that the complaint filed in the instant action,

having been filed in Michigan, also contains allegations of violations of a Michigan statute that prohibits marketing calls to individuals who did not authorize contact from the caller. However, this claim is encompassed by the TCPA claims. See id. (finding issues between two actions substantially overlapped where state law claim in second action was encompassed by claim brought in the first action). As a result, this factor weighs in favor of applying the first-to-file rule.

### C. Similarity of the Parties Involved

#### 1. Similarity of the Putative Classes

The parties in the two actions must only "'substantially overlap'" for the first-to-file rule to apply; they need not be perfectly identical. Baatz, 814 F.3d at 790 (quoting Save Power Ltd. v. Syntek Fin. Corp., 121 F.3d 947, 950-51 (5th Cir. 1997) (citing Certified Restoration, 511 F.3d at 551)). The first-to-file rule in a class action suit requires the Court to compare the proposed classes, not the named plaintiffs. Baatz, 814 F.3d at 790 ("[F]or purposes of identity of the parties when applying the first-to-file rule, courts have looked at whether there is substantial overlap with the putative class even though the class has not yet been certified.").

Plaintiffs' sole argument as to why there is no overlap between the proposed classes in the two actions is as follows:

> [The Troy Market Center agent who called Plaintiffs] did not obtain Plaintiffs Samataro and Miskokomon's telephone numbers from the same sources that the Keller Williams agents in the Wright action obtained the Wright plaintiffs' telephone numbers from. Therefore, because the classes in the Wright action and this action are expressly limited to persons whose telephone numbers were obtained from the same sources that the plaintiffs' numbers were obtained from—i.e., they are defined to include only persons "for whom the Defendants claim . . . they obtained prior express written consent in the same manner as the Defendants claim they supposedly obtained prior express written consent to call Plaintiffs"—the classes the plaintiffs in Wright will ultimately seek to certify will not overlap with the classes Plaintiffs will seek to certify here.

Pl. Resp. to Def. Mot. to Dismiss at 3-4 (Dkt. 31). There are at least two issues with this argument. First, as KWRI points out, "this is not how plaintiffs' counsel chose to define his classes in either

6

case." Def. Reply at 3 (Dkt. 32). Neither in this case nor in the Wright action are any of the proposed classes defined as including only members whose numbers were obtained by the same sources from which the plaintiffs' numbers were obtained.

Further, even if the classes were so defined in this action, this would not prevent a finding of substantial overlap. As the Sixth Circuit explained in Baatz, the relevant inquiry is whether plaintiffs in the second action would be considered members of the class, if certified, in the first action. 814 F.3d at 791. The language used to define the proposed "prerecorded no consent" class and the "do not call registry" class in the two actions differ only in two minor respects. First, whereas the definitions of the "prerecorded no consent" class and the "do not call registry" class in the Wright action include all persons in the United States who were called by "[KWRI] (or an agency acting on behalf of [KWRI])," the definitions of these classes in this action include all persons in the United States who were called by "M77 or Keller Williams Troy Market Center." Compare Am. Compl. ¶ 89 with Wright action 2d Am. Comp. ¶ 50. However, because Plaintiffs plead that M77 and Troy Market Center acted at the direction of KWRI in calling Plaintiffs, by Plaintiffs' own definition, M77 and Troy Market Center constitute "agenc[ies] acting on behalf of [KWRI]." Second, whereas the "do not call registry" class in the Wright action includes persons who were called "for the purpose of selling Defendant's products and services," the "do not call registry" class in this action includes persons who were called "for substantially the same purpose as the calls to Plaintiffs." Compare Am. Compl. ¶ 89 with Wright action 2d Am. Comp. ¶ 50. However, because Plaintiffs plead that they were called for the purpose of being offered Defendants' services, Am. Compl. ¶¶ 42-44, 79, by Plaintiffs' own definition they were called "for the purpose of selling Defendant's products and services." As a result, Plaintiffs would clearly be members of the Wright action classes, if certified, despite the minor language differences in the

proposed class definitions. Thus, there is substantial overlap between the putative classes in the two actions.

### 2. Similarity of the Defendants

Although not raised by either party, the overlap between the defendants in the two actions merits discussion. While KWRI is clearly a named defendant in both actions (and is the only named defendant in the Wright action), the instant action includes two additional named defendants, M77 and Troy Market Center. A question might be raised as to whether the addition of these two defendants in the second suit prevents application of the first-to-file rule.

As a starting point to the Court's analysis, the mere fact that the second action includes two additional defendants does not, per se, prevent application of the first-to-file rule, as the defendants in the two actions need not be perfectly identical but, rather, need only "substantially overlap." Baatz, 814 F.3d at 790. "Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." Save Power Ltd., 121 F.3d at 950-951 (citations omitted).

On occasion, courts have found substantial overlap between defendants merely by virtue of the fact that some of the defendants are named in both actions. See, e.g., Collier, 2018 WL 2364050, at *7 ("The Debtors and MedCare and CCG are defendants in the Adversary Proceeding. Only MedCare and CCG are defendants in the Tennessee case. Thus, again, there is clearly substantial overlap, even though the defendants are not identical."). However, it appears that, more often, courts look beyond the mere fact that some defendants are named in both actions and analyze whether the defendants not named in one suit have an affiliation (such as a business relationship) with the named defendants in that suit. For instance, in Sporn v. TransUnion Interactive, Inc., No. 18-5424, 2019 WL 151575, at *1, *5 n.10 (N.D. Cal. Jan. 10, 2019), the district court found

8

substantial overlap between the parties where the plaintiff's counsel filed a first class action against a defendant, TUI, and its parent companies. The same counsel then filed a second class action against TUI in a different district court. In addition to finding substantial overlap between the putative classes, the district court held there was substantial overlap between the defendants. Id. at *5. The court explained that the fact that TUI's parent companies were named as defendants in one action, but not the other, did not render the defendants dissimilar, because TUI was the entity that actually sold the products at issue in each case; the parent companies allegedly simply provided the products through TUI. Id. at *5 n.10.

By contrast, in Jones v. Xerox Commercial Solutions, LLC, No. 13-650, 2013 WL 3245957, at *4 (S.D. Tex. June 26, 2013), the district court found that substantial overlap did not exist between either the plaintiffs or the defendants. The first suit involved a collective action brought for wage-related claims under the Fair Labor Standards Act against Xerox and three other defendants, Livebridge, Inc., Affiliated Computer Services, Inc. and Affiliated Computer Services, LLC (collectively, the "Washington Defendants"). Id. at *1. The second action involved a collective action brought in a separate district court for wage-related claims against only Xerox. Id. The district court found no substantial overlap between the defendants because there was no evidence or allegation that Xerox "is affiliated with any of the Washington Defendants." Id. at *4.

Similarly, in Martin v. Medicredit, No. 16-1138, 2016 WL 6696068 (E.D. Mo. Nov. 15, 2016), the district court held there was not substantial overlap between the parties where the first action involved a putative class action bringing claims for violations of the TCPA against Memorial Healthcare Group, Inc. ("Memorial") and two debt collectors Memorial hired to place debt-collection calls, NPAS and Medicredit, and the second action involved a class action bringing TCPA claims against Wentworth–Douglass Hospital and Portsmouth Regional Hospital ("Portsmouth") and a debt-collector to which Portsmouth assigned its delinquent accounts,

9

Medicredit. Id. at *1-2. In addition to finding no substantial overlap between the proposed putative classes in the two actions, the court noted that there was a lack of identity among the defendants in the two actions because "Defendant Portsmouth is not a party to the [first] action and two defendants in [the first action], creditor Memorial and debt-collector NPAS, are not parties in [the second action]." Id. at *4. Although not expressly articulated in the district court's reasoning, it is apparent that no evidence or allegations showed Portsmouth, a defendant named only in the second action, had any affiliation with Memorial or NPAS, defendants named only in the first action.

The instant case is like Collier and unlike Jones and Martin. Although the exact nature of the corporate relationship between KWRI and M77/Troy Market Center is unclear, Plaintiffs clearly allege that KWRI "transacts business" with M77 and Troy Market Center and provides "training and direction" to the agents of these two entities. Am. Compl. ¶ 8. As a result, the additional defendants in the instant case are alleged to have a clear affiliation with the sole overlapping defendant, KWRI. Moreover, Plaintiffs allege KWRI "directs, authorizes, and/or ratifies" M77's and Troy Market Center's unsolicited telemarketing calls at issue. Id. at 3. Thus, KWRI allegedly placed the calls at issue through its affiliation with M77 and Troy Market Center. For these reasons, there is substantial overlap between the parties.

### 3. Jurisdiction Over the Additional Defendants

Although not addressed by the parties in their briefing, discussion regarding a jurisdictional concern is warranted. Given Plaintiffs' minimal allegations regarding M77 and Troy Market Center's respective citizenship and contacts with Texas, it is unclear whether the Western District of Texas could assert personal jurisdiction over M77 and Troy Market Center and, as relevant here, whether a lack of personal jurisdiction over these parties should militate against applying the first-to-file rule. While the Sixth Circuit has not expressly addressed the issue of whether it is necessary

10

for the second district court to analyze the first district court's potential jurisdiction over all defendants in the second action before applying the first-to-file rule, the Fifth Circuit has directly addressed the issue. In Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599 (5th Cir. 1999), the Fifth Circuit held that the second district court typically does not do so:

> While the likelihood of a jurisdictional dispute in the first-filed court may be a factor to consider in applying the rule, resolving the dispute in favor of that court's jurisdiction is never a condition precedent to applying it. See Berisford Capital Corp. v. Central States, Southeast and Southwest Areas Pension Fund, 677 F. Supp. 220 (S.D.N.Y.1988) ("I would not conclude in the 'sound discretion' allotted to me in this matter that [jurisdictional uncertainty in the first filed court], standing virtually alone, should be so compelling as to cause me to depart from the well established and salutary first-filed rule."); Brower v. Flint Ink Corp., 865 F. Supp. 564, 570 (N.D. Iowa 1994) (noting that Berisford "rejected the suggestion that jurisdictional uncertainties standing alone should be so compelling as to cause the court to depart from the 'first filed rule.' "); FirsTier Bank, N.A. v. G–2 Farms, No. 95–3118, 1996 WL 539217, at *4 (D. Neb. Mar. 11, 1996) (noting that a jurisdictional dispute is only one factor to consider).

Id. at 605-606. Post-Cadle, additional second district courts have declined to analyze the first district court's jurisdiction. See, e.g., Achari v. Signal Intern, LLC, Nos. 13-222, 13-318, 13-319, 2013 WL 5705660, at *4 (S.D. Miss. Oct. 18, 2013).

Under Cadle's guidance, the Court need not attempt to conduct an in-depth analysis of whether the Western District of Texas may be able to assert personal jurisdiction over M77 and Troy Market Center. Such an analysis would be particularly futile in light of the absence of allegations regarding where these two companies are "at home" and the contacts they may have with Texas. The uncertainty of whether the Western District of Texas may assert personal jurisdiction over M77 and Troy Market Center, is not, alone, sufficiently compelling to prevent application of the first-to-file rule.

### D. Equitable Considerations

Finally, the Court must also consider whether equity weighs in favor of applying the first-to-file rule. "Evidence of 'inequitable conduct, bad faith, anticipatory suits, [or] forum shopping,'

merit not applying the first-to-file rule in a particular case." Baatz, 814 F.3d at 789 (quoting Certified Restoration, 511 F.3d at 551-552). The "classic case" in which courts decline to apply the first-to-file rule for equitable reasons involves one party filing an anticipatory suit (usually a declaratory judgment action) in that party's preferred forum. See id. (citing Certified Restoration, 511 F.3d at 552; AmSouth Bank, 386 F.3d at 791 n.8). This is not such a case. Nor is this a case in which KWRI has engaged in forum shopping to have its claims resolved in a sympathetic venue. See Heyman, 781 F. App'x at 478 ("Indeed, it is [Plaintiff], not [Defendant], who has engaged in forum shopping . . . . Not only did [Plaintiff] file his own class action suit in Indiana federal court based on the same alleged violations contained in the complaint in this Kentucky litigation, but his attorney also filed the complaint in [the first action] that sought to certify a class of claimants that also would include [Plaintiff]."). Declining to apply the first-to-file rule should be done rarely, and the equities do not clearly support finding that this is one of those rare cases.

Taking into account all appropriate factors, the Court concludes that the first-to-file rule should be followed.

### E. Power to Dismiss or Transfer Under the First-to-File Rule

Once a court decides to apply the rule, the court may dismiss or transfer the action, or "'it may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit.'" Baatz, 814 F.3d at 793 (quoting Smith, 129 F.3d at 361). Dismissal is improper "when doing so could adversely affect a party's interests." Id. at 793-794. For instance, in the class action context, dismissing a second action could adversely affect the plaintiff's interests if the time to join the class or to intervene has already closed. See Collier, 2018 WL 2364050, at *9. Such is not a concern here, however, as it appears the plaintiffs in the Wright action have not yet moved to certify the class. See Pl. Resp. to Def. Mot. at 22 (providing the Wright actions will seek to certify a class, thereby implying no

12

such motion has been filed yet). Given the circumstances of this case, transfer of this action to the court presiding over the earlier filed and substantially related action is only logical.

Nevertheless, Plaintiffs argue transferring the instant action is improper for the following reasons:

> [T]he Wright action has been stayed pending a determination by the Supreme Court regarding what constitutes an automatic telephone dialing system under the plain language of the TCPA, and resolving that issue is irrelevant to Plaintiffs Samataro and Miskokomon's and the classes' claim in this action, as Plaintiffs Samataro and Miskokomon do not assert a claim arising from calls made using an automatic telephone dialing system . . . dismissing this action pending resolution of Wright would prejudice Plaintiffs and putative class members because it risks the loss of relevant evidence necessary to vindicate their rights.

See Pl. Resp. to Def. Mot. at 22-23.

The concerns raised by Plaintiffs do not make for a persuasive case against transferring the action. Plaintiffs' concern centers on the possible loss of evidence due to the delay that will be occasioned by the instant case being transferred to the court presiding over a related stayed case. But there is no reason to believe that the delay that Plaintiffs fear will be great in length. The Wright action has been stayed pending the Supreme Court's decision in a case in which oral argument was held in December 2020. See Transcript of Oral Argument, Facebook, Inc. v. Duguid, —U.S.—, 2020 WL 7229730 (2020) (No. 19-511). Because a decision is likely yet this Term, the stay in the Wright action is not likely to last much longer. And while Plaintiffs argue that the substance of the Supreme Court's decision will not impact their case, that is not a consideration that carries much weight for purposes of this Court's transfer decision; it is not unusual that some parties suffer delays while proceedings involving only co-parties must be concluded first.

Accordingly, the Court concludes that a proper exercise of its discretion counsels transfer of this case to the Western District of Texas.

**F. Personal Jurisdiction and Venue**

13

Because the Court has determined that transfer is appropriate under the first-to-file rule, the Court need not address KWRI's request to dismiss the action for lack of this Court's personal jurisdiction or improper venue in this district.  See Clear! Blue, LLC v. Clear Blue, Inc., 521 F. Supp. 2d 612, 616 (E.D. Mich. 2007).

### III. CONCLUSION

For the reasons set forth above, KWRI's motion is granted insofar as KWRI seeks transfer of the instant action to the Western District of Texas.  Accordingly, this action is transferred to the Western District of Texas.

SO ORDERED.

Dated:  January 22, 2021  
     Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge